V. James DeSimone (SBN: 119668)
**V. JAMES DESIMONE LAW**
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292
Telephone:  310.693.5561
Facsimile:   323.544.6880

Kaveh Navab (SBN: 280235)
**NAVAB LAW**
13160 Mindanao Way, Suite 280
Marina Del Rey, California 90292

Lawrance A. Bohm (SBN 208716)
Ryann E. Hall (SBN 306080)
**BOHM LAW GROUP, INC.**
4600 Northgate Boulevard, Suite 210
Sacramento, California 95834
Telephone:  (916) 927-5574
Facsimile:   (916) 927-2046

Attorneys for Plaintiff,
Yowan Yang

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| YOWAN YANG, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ACTIONET, Inc.; L-3 National Security Solutions, Inc.; and DOES 2 through 10, Inclusive,<br><br>Defendants. | Case No: 2:14-cv-00792-AB-(SHx)<br><br>**PLAINTIFF YOWAN YANG'S NOTICE OF MOTION AND MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES PURSUANT TO CIVIL CODE 52.1 AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Filed Concurrently with Declarations of V. James DeSimone and Carol Sobel, in support thereof]*<br><br>Date:      January 30, 2017<br>Time:      10:00 a.m.<br>Courtroom: 4<br>Judge: Honorable Andre Birotté, Jr. |

i

## TABLE OF CONTENTS

I.    INTRODUCTION:................................................................................2

II. FACTUAL AND LITIGATION HISTORY .......................................3

   A. Factual Background ......................................................................3

   B. Litigation History .........................................................................4

III.   PLAINTIFF IS ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES UNDER CALIFORNIA CIVIL CODE§52.1(h). ................5

   A.  Plaintiff is Entitled To Full Compensation of Attorneys' Fees. .....5

   B.  The Court should be guided by a "lodestar" computation..............8

   C.  The Number of Hours Spent Was Fully Reasonable. ...................8

   D. Counsel's Hourly Rates Are Reasonable.....................................10

IV. Plaintiff is entitled to recover costs under Federal Rule of Civil Procedure 54 (d)............................................................................................12

V.   THE COURT SHOULD AWARD A MULTIPLIER OF 2.0. ........13

   A. Contingent Risk.............................................................................13

   B.  The Novelty and Difficulty of the Issues Involved and the Skill Displayed in Presenting Them........................................................14

VI.   CONCLUSION..............................................................................15

**PLAINTIFF'S YOWAN YANG'S NOTICE OF MOTION AND MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

## TABLE OF AUTHORITIES

**Federal Cases**

*Beaty v. BET Holding, Inc.* 222 F.3d 607, 612 (9th Cir. 2000) ............................7

*Blum v. Stenson* 465 U.S. 886, 893 (1984)....................................................7, 11

*Bouman v. Block,* 940 F.2d 1211, 1237 (9th Cir. 1991)....................................5

*Brewster v. Dukakis,* 786 F.2d 16, 18 (1st Cir. 1986)......................................6

*City of Burlington v. Dague,* 505 U.S. 557, 562 (1992)....................................8

*City of Riverside v. Rivera,* 477 U.S. 561, 581 (1986)......................................6

*Copeland v. Marshall,* 641 F.2d 880, 904 (D.C. Cir. 1980) ............................10

*Crommie v. State of Cal., Public Utilities Com'n,* 840 F. Supp. 719, 725 (1994).13

*Guam Society of Obstetricians & Gynecologists v. Ada,* 100 F.3d 691, 700 (9th
   Cir. 1996) ....................................................................................6

*Hensley v. Eckerhart,* 461 U.S. 424, 435 (1983) ........................................6, 8

*Missouri v. Jenkins,* 491 U.S. 274, 284-288 (1989)......................................9, 11

*Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839 (9th Cir. 1982)...................9

*Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1499 (9th Cir. 1995)......................6

*Riverside v. Rivera,* 477 U.S.. 561, 575(1986)..........................................7

*Serrano v. Unruh,* 32 Cal.3d 621 (1982)..................................................6

*Sheehan v. Donlen Corp.* 173 F.3d 1039, 1048 (7th Cir. 1999) ..........................10

*Tyco Int'l. Ltd Multidistrict Litigation,* 535 F.Supp.2d 249, 272 (2007).................9

*Ustrak v. Fairman,* 851 ..................................................................6

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 1997).......................15

*Wing v. Asarco, Inc.,* 114 F.3d 986 (9th Cir. 1997).....................................14


**State Cases**

*Beasley v. Wells Fargo Bank,* 235 Cal.App.3d 1407 (1991) ..............................13

*Citizens Against Rent Control v. City of Berkeley,* 181 Cal. App. 3d 213, 232
   (1986) ........................................................................................9

**PLAINTIFF'S YOWAN YANG'S NOTICE OF MOTION AND MOTION FOR AWARD OF
REASONABLE ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

*City of Oakland v. Oakland Raiders,* 203 Cal. App. 3d 78, 84, (1988) .................15

*Coalition for Los Angeles County Planning v. Board of Supervisors,* 76 Cal.App.3d 241 (1977)....................................................................................13

*County of San Luis Obispo v. Abalone Alliance,* 178 Cal. App. 3d, 848, 869(1986)9

*D.C. v. Harvard-Westlake School* 176 Cal.App.4th 836, 864-65 (2009) ................7

*Engel v. Worthington,* 60 Cal.App.4th 628, 632 (1997) .........................................5

*Guinn v. Dotson,* 23 Cal. App. 4th 262, 269 (1994) ...............................................8

*Hadley v. Krepel,* 167 Cal.App.3d 677, 682 (1985)..............................................10

*Horsford v. Bd. Of Trustees,* 132 Cal.App.4th 359, 399-400 (2005).............7, 9, 10

*Hull v. Rossi,* 13 Cal.App.4th 1763, 1768-69 (1993)..............................................5

*Ketchum v. Moses,* 24 Cal. 4th 1122,at 1132, 1133, 1136 (2001) .........................14

*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.,* 172 Cal. App. 3d 914, 951 (1985) ......................................................................................................................9

*Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48 (1977) ..............................9, 13

*Sundance v. Municipal Court,* 192 Cal. App. 3d 268, 274 (1987)...........................9

*Wershba v. Apple Computer, 91* Cal. App.4th at 224, 255 (2001) ........................13

**Statutes**

42 U.S.C. §1988 ....................................................................................................8, 9

52(b)(3)....................................................................................................................5

Civ. Code §52.1(b) ..................................................................................................5

Civil Code §52.1(h) ................................................................................................13

Civil Code section 43 ............................................................................................3, 4

Civil Code section 52.1 ......................................................................................3, 4, 7

Code Civ. Proc., §1033.5, subd. (a)(4)(D)(10)(B)&(C)...........................................5

Code of Civil Procedure §1032 ...............................................................................5

Fed. R. Civ. P. 54(d)(1) ..........................................................................................12

**PLAINTIFF'S YOWAN YANG'S NOTICE OF MOTION AND MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES; MEMORANDUM OF POINTS AND AUTHORITIES**

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORDS:**

PLEASE TAKE NOTICE that on January 30, 2017 at 10:00 a.m., or as soon thereafter as the matter may be heard in front of the Honorable Judge Andre Birotté, Jr., in Courtroom 4, Plaintiff Yowan Yang will move this Court for an Order awarding reasonable attorney fees pursuant to Code §52.1(h) and recoverable costs pursuant to the Federal Rules of Civil Procedure. This motion is based on the following Memorandum of Points and Authorities, the Declarations filed in support of such motion, all documents and records filed in this case and on such further written and/or oral argument and evidence as may be submitted.

Plaintiff seeks an award of reasonable attorney's fees for the successful prosecution of his California Civil Code §52.1 claim against Defendant ActioNet, Inc.

V. JAMES DESIMONE LAW
BOHM LAW GROUP, INC.
NAVAB LAW

Date: November 23, 2016                 By: _____

V. JAMES DESIMONE, ESQ.
KAVEH NAVAB, ESQ.
LAWRANCE A. BOHM, ESQ.
RYANN E. HALL, ESQ.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION:

The verdict on March 17, 2016 marked the culmination of extensive and dedicated work and effort by Plaintiff's counsel who sought to achieve a just result for Plaintiff Yowan Yang ("Mr. Yang"). This was an extraordinarily hard fought case that required a monumental amount of resources, preparation and work in order to achieve the excellent verdict rendered by the jury. This action arises out of the wrongful termination of Mr. Yang by Defendant ActioNet, Inc. ("ActioNet") after he was verbally and physically attacked by Cy Tymony in on the workplace, when Mr. Yang was exercising his right to a safe work place. The overwhelming evidence demonstrated that the consequential damage of Tymony's conduct was Mr. Yang's termination, and that ActioNet failed to do any investigation into the incident on July 24, 2012 or Yang's prior complaints of threats from Tymony.

Prosecution of this matter required an unusual degree of diligence and consumed an inordinate amount of the Plaintiff's counsel's time, in particular, leading up to and during the nearly two-week trial. This case also required a substantial amount of work in the years before trial, particularly through the discovery phase, as there were numerous witnesses to depose, including some as far away as Washington D.C. Throughout the litigation of this matter Plaintiff's counsel filed oppositions to motions to dismiss filed by Defendant ActioNet, and previously dismissed Defendant L-3, and defeated an exhaustive motion for summary judgment. Leading up to trial, Plaintiff's counsel opposed seven motions *in limine*, and spent a substantial amount of time on jury instructions, the verdict form and other trial documents, prior to and during trial. Plaintiff diligently prepared for, and conducted trial, insuring that key witnesses who were no longer employed by ActioNet testified at trial and/or were deposed.

2

Defendants' counsel, Rebecca Aragon and her team at Littler Mendelsohn put up a vigorous defense of its client necessitating dedicated and vigilant prosecution of this wrongful termination civil rights case.

The jury returned a verdict of $2,393,540 in compensatory damages and $5,000,000 in punitive damages against ActioNet. Plaintiff prevailed on his causes of action for wrongful termination in violation of public policy, Civil Code section 43, Civil Code section 52.1 and negligent infliction of emotional distress. Under Civil Code 52.1(h) Plaintiff is entitled to reasonable attorney fees as the prevailing party, as the jury returned a verdict in favor of Mr. Yang's Civil Code 52.1 claim, finding that Tymony, in the course and scope of his employment with Actionet, violated Mr. Yang's civil rights through threats and intimidation.

Successfully litigating employment cases of this nature requires extensive experience and skill and understanding of the issues that are unique to employment matters as compared with general civil practice. The favorable trial result in this case on Plaintiff's claim was the product of a tremendous amount of hard work and skill on the part of Plaintiff's counsel in preparing and presenting the case at trial. Effective representation of Mr. Yang's claims limited Plaintiffs' counsels' ability to take on and work on other cases. Plaintiff now seeks compensation for the hours expended in the nearly three-year quest for justice. (DeSimone Dec. ¶¶ 7 -12).

## II. FACTUAL AND LITIGATION HISTORY

### A. Factual Background

On July 24, 2012, Cy Tymony, acting in the course and scope of employment, threatened and assaulted Yowan Yang when he was exercising his right to a safe workplace. A consequential damage of Tymony's conduct was Yang's termination. ActioNet failed to do any investigation into the July 24, 2012 incident or Yang's complaint of workplace violence, despite the overwhelming evidence by way of two eye witnesses and a Federal Aviation Administration investigation report

3

indicating that Yang was the "complete victim." The jury found that ActioNet's failure to provide a safe workplace or the incident in which Mr. Yang was a victim of workplace violence was a substantial motivating reason for his termination was supported by substantial evidence.

Plaintiff prevailed on his causes of action for wrongful termination in violation of public policy, Civil Code Section 43, Civil Code Section 52.1 and negligent infliction of emotional distress. The jury also returned a positive finding for punitive damages. Following the liability phase, Plaintiff presented evidence of ActioNet's ability to pay, calling the Controller of ActioNet as a witness. ActioNet called its Human Resources Director, Janice Raleigh, to testify during the punitive damages phase. Inflaming the jury, Ms. Raleigh testified that low level employees would likely be laid off as a result of the verdict. It took the jury less than thirty minutes to award $5,000,000 in punitive damages.

**B. Litigation History**

The complaint was filed in the Superior Court of the State of California for the County of Los Angeles on December 17, 2013. The case was removed to federal by Defendant ActioNet on January 31, 2014 (Dkt. No.1). ActioNet filed several motions to dismiss (Dkt. Nos 82, 103) and a motion for summary judgement (Dkt. 128). Plaintiff opposed all motions (Dkt. 87, 110, 132).

The jury was impaneled and the trial *Yang v. ActioNet* began on March 8, 2016. The trial lasted six days, including the punitive damage phase. The jury began its deliberations on March 16, 2016. On March 17, 2016 the jury returned a verdict for plaintiff and awarded punitive damages.

On June 9, 2016 Defendant filed a Motion for a New Trial and a Motion for Judgment as a Matter of Law (Dkt. 315, 318). On July 1, 2016, Plaintiff filed his Opposition to Defendant's Motion for a New Trial and Opposition to Defendant's Motion for Judgement as a Matter of Law. (Dkt. 327, 328). ActioNet filed its reply briefs on July 21, 2016. (Dkt. 331). On August 22, 2016, Judge Birotte conducted a hearing on the motions.

4

## III.   PLAINTIFF IS ENTITLED TO RECOVER REASONABLE ATTORNEY'S FEES UNDER CALIFORNIA CIVIL CODE§52.1(h).

### A.      Plaintiff is Entitled To Full Compensation of Attorneys' Fees.

Code of Civil Procedure §1032 entitles "a prevailing party . . . as a matter of right to recover costs in any action or proceeding." Attorneys' fees are included as costs when authorized by statutes. Code Civ. Proc., §1033.5, subd. (a)(4)(D)(10)(B)&(C). Mr. Yang prevailed on his Bane Act claim for the violation of his civil rights by threats, intimidation or coercion. Civ. Code §52.1(b), *see* (Dkt. 261 at p. 4). Thus pursuant to Civ. Code §52.1(h), "In addition to any damages, injunction, or other equitable relief awarded in an action brought pursuant to subdivision (b), the court may award the petitioner or plaintiff reasonable attorney's fees."[1] Prevailing plaintiffs under §52 are entitled to attorneys' fees and the trial court possesses discretion only to determine the amount of the fees. *Engel v. Worthington*, 60 Cal.App.4th 628, 632 (1997) (holding a fee award under section 52 is mandatory). In fact, courts have found it an abuse of discretion to deny fee awards to prevailing parties who have satisfied the statutory criteria. *Hull v. Rossi*, 13 Cal.App.4th 1763, 1768-69 (1993).

The courts have repeatedly held that attorneys in civil rights matters are entitled to recover their full fees and costs if they achieve meaningful and substantial relief. *Bouman v. Block*, 940 F.2d 1211, 1237 (9th Cir. 1991) (reasoning that plaintiff proceeding under multiple theories for sex discrimination and

---

[1] Based on the language of the statute, a plaintiff who prevails under section 52.1(b) is also entitled to attorney's fees pursuant to 52(b)(3). Cal. Civ. Code §52.1(b) provides that an individual may institute and prosecute a violation under the section with "a civil action for damages, including but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." Then section 52(b)(3) provides for "[a]ttorney's fees as may be determined by the court."

5

prevailing on FEHA claims entitled to recover attorneys' fees). As the Supreme Court explained, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). If the rule were otherwise, attorneys would be discouraged from taking on high risk cases such as this one. *Id.*; *see also Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995); *Serrano v. Unruh*, 32 Cal.3d 621 (1982); *Guam Society of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 700 (9th Cir. 1996) (reasoning that plaintiffs cannot be faulted for their thoroughness in pleading related claims).

A fully compensatory fee is one that encourages the vindication of constitutional and statutory rights through recovery of all costs and time spent on the case, calculated at private market rates. It must ensure that attorneys are paid for all the time they devote to the litigation. It is not limited by the number of causes of action on which relief is awarded, or the amount of damages recovered. *See City of Riverside v. Rivera*, 477 U.S. 561, 581 (1986). Parsing discrete issues according to their relative importance or outcome is disfavored because doing so would require the trial court to make mini-determinations of prevailing party status on each dispute. *See Brewster v. Dukakis*, 786 F.2d 16, 18 (1st Cir. 1986). Once a plaintiff has been determined to be the prevailing party, he is entitled to all reasonable time spent:

> Where "the plaintiff's claims of relief . . . involve a common core of facts or [are] based on related legal theories," so that "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis, . . . the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Ustrak v. Fairman*, 851 F.2d 983, 988 (7th Cir. 1988) (quoting *Hensley*, 461 U.S. at 435 (1983)).

6

At trial, the jury returned a verdict in favor of Plaintiff's § 52.1 claim against Defendant ActioNet for the violent actions of Cy Tymony, committed in the course and scope of his employment, against Plaintiff. (Dkt. 261 at p. 4). This entitles Mr. Yang to an award of reasonable attorney's fees. *See D.C. v. Harvard-Westlake School* 176 Cal.App.4th 836, 864-65 (2009). ("[T]he Tom Bane Civil Rights Act expressly provide[s] that a court may award attorney fees only to the plaintiff. Neither act [referring also to the Ralph Civil Rights Act] permits an award of attorney fees to a defendant, even if the defendant prevails.").

In addition, reasonable fees may exceed the verdict amount. Fee awards must make civil rights cases as financially attractive as "other types of equally complex . . . litigation." *Blum v. Stenson* 465 U.S. 886, 893 (1984). As the Ninth Circuit has held:

> [Fee awards] vindicate important public interests whose value transcends the dollar amounts that attach to many civil rights claims. Fee awards ensure that neither financial imperatives nor market considerations raise an insurmountable barrier that prevents attorneys from litigating meritorious cases, and even a relatively small damages award 'contributes significantly to the deterrence of civil rights violations in the future.'"

*Beaty v. BET Holding, Inc.* 222 F.3d 607, 612 (9th Cir. 2000) (quoting *Riverside v. Rivera*, 477 U.S.. 561, 575(1986)).

Courts have held that when plaintiffs' attorneys are successful, they be fully compensated for the market value of their efforts, because ". . . a failure to fully compensate for the enormous risk in bringing even a wholly meritorious case could effectively immunize large or politically powerful defendants from being held to answer for constitutional deprivations, resulting in harm to the public." *Horsford v. Bd. Of Trustees*, 132 Cal.App.4th 359, 399-400 (2005).

In this case, Defendant ActioNet's counsel attempted to deter Plaintiff's

7

Counsel from pursuing this litigation and suggesting only a nominal settlement was possible, by providing selective and incomplete emails designed to show the FAA instructed it to terminate Mr. Yang. Plaintiff's counsel was diligent in pursuing discovery, taking numerous depositoins and subpoenaing the FAA investigator to obtain evidence to undermine Defendant's contention. Defendant's counsel put up roadblocks at every turn and the time spent on this case reflects the diligent work of Mr. Yang's Counsel as well as the vigorous defense mounted by ActioNet. (DeSimone Dec. ¶ 9).

### B.    The Court should be guided by a "lodestar" computation.

The object of judicial fee determination is to simulate the results that would be obtained if the lawyer were dealing with a paying client. The starting point in achieving that objective is a determination of the "lodestar." The "lodestar" is the product of hours reasonably expended on the case multiplied by the customary hourly rates generally prevailing in the relevant community for services rendered by similarly qualified attorneys. *Henlsey v. Eckhart*, 461 U.S. 424 (1983). Under current law, the United States Supreme Court has sought to make uniform the manner of determining what a "reasonable fee" is under a fee-shifting statute such as 42 U.S.C. §1988. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). As a general proposition, the Court adopted the position that "the 'loadstar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a '*strong presumption*' that the lodestar represents a 'reasonable' fee . . ." *Id.* (emphasis added).

### C.    The Number of Hours Spent Was Fully Reasonable.

Using the lodestar formula, Plaintiff's counsel are entitled to compensation for the hours of work performed by all attorneys, law graduates, and paralegals[2]

---

[2] Awards of attorney's fees for paralegal time have become commonplace throughout California. *Guinn v. Dotson*, 23 Cal. App. 4th 262, 269 (1994) (the

8

with each individual's work compensated at a reasonable rate, according to his/her experience and skill. *See Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 48 (1977); *In re Tyco Int'l. Ltd Multidistrict Litigation*, 535 F.Supp.2d 249, 272 (2007) (reasoning that like paralegal time, it is "appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar."). Plaintiff's counsel's lodestar is reasonable because: (a) detailed, contemporaneous records show that counsel expended all hours on litigation tasks necessary to attaining relief, (b) counsels' billing rates are comparable to those of attorneys with similar expertise and experience and, (c) counsel obtained an excellent result.

The "basis for the trial court's calculation [of hours spent] must be the actual hours counsel has devoted to the case, less those that result from inefficient or duplicative use of time." *Horsford v. Board of Trustees of California State University*, 132 Cal.App.4th 359, 395 (2005). Even time spent by more than one attorney on a particular task is reasonable, provided there is no duplication. *Id.* at 396. Further, hours are reasonable if they were reasonably directed to furthering the client's interests and compensation is appropriate for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest..." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Finally, time records are "the starting point

---

fact that paralegal time was volunteered did not warrant excluding paralegal time from the calculation of attorney's fees); *Sundance v. Municipal Court*, 192 Cal. App. 3d 268, 274 (1987); *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, 172 Cal. App. 3d 914, 951 (1985) ("necessary support services for attorneys, e.g., secretarial and paralegal services, are includable within an award of attorney's fees"); *Citizens Against Rent Control v. City of Berkeley*, 181 Cal. App. 3d 213, 232 (1986); *County of San Luis Obispo v. Abalone Alliance*, 178 Cal. App. 3d, 848, 869(1986)  ; *Missouri v. Jenkins*, 491 U.S. 274, 284-288 (1989) (A fee award under 42 U.S.C. § 1988, which provides for a reasonable attorney's fee as part of cost, includes paralegal fees billed at market rate).

9

for [the trial court's] lodestar determination." *Horsford,* 132 Cal.App.4th at 397. "[T]he verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous." *Id.* at 396. After credible time records document the time spent, the burden shifts to the defendant to show that specific time is unreasonable. *Hadley v. Krepel,* 167 Cal.App.3d 677, 682 (1985).

The time spent litigating this matter is fully documented by detailed time records attached to the declaration of Mr. DeSimone. (DeSimone Dec. ¶¶ 22-23). Further, the stakes were high for Plaintiff. Defendant vigorously defended each stage of litigation and its settlement offers did not account for its conduct in terminating a victim of workplace violence for cause. (DeSimone Dec. ¶¶ 12). This callous decision destroyed Yowan Yang's career and, indeed, negatively impact every aspect of his life, so the case became an "all or nothing" proposition requiring counsel to be ever-diligent and thorough. In the comparable context of employment discrimination, one court held:

> Plaintiff's attorneys did a thoroughly professional and able job in a difficult sort of case. We do not fault the quality of [the defendant's] representation. A case like this can go either way. Nonetheless, a plaintiff risks the likelihood, given the low success rate of employment discrimination cases, of bearing his own attorney's and at least the possibility of being stuck with the employer's attorney's fees. It is, therefore, rational and so reasonable for a plaintiff to encourage his attorneys to be thorough.

*Sheehan v. Donlen Corp.* 173 F.3d 1039, 1048 (7th Cir. 1999).

While Defendant had every right to furiously defend this case, it now must bear the resulting fees: "[a party] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland v. Marshall,* 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc).

**D.    Counsel's Hourly Rates Are Reasonable**

Both the California and the United States Supreme Courts have clearly held

10

that fee awards to public interest attorneys who do not charge their clients must be based on the prevailing billing rates of attorneys in private practice with similar skills and experience. *See Blum,* 465 U.S. 886 at 895 (legislative history of civil rights statutes requires that hourly rates for public interest attorneys equal prevailing private market rates); *Serrano IV,* 32 Cal.3d at 640-44 (same).

Plaintiff's counsel request compensation for the work in this case at their regular hourly rates for the year 2016. For the fee award to be reasonable, it must be based on current, rather than historic, hourly rates. *Missouri v. Jenkins,* 491 U.S. 274, 284 (1989) (reasons that a court may account for delay in payment through use of current rates). These rates are reasonable as measured by the rates charged by attorneys of comparable experience and skill in the Southern California area.

Mr. DeSimone's hourly rate of $865.00 is reasonable. Mr. DeSimone's hourly rate was calculated after engaging an expert, Carol Sobel, who prepared a survey of market rates for attorneys. Moreover, Judges have recognized that Mr. DeSimone's experience and skill is valued at a rate comparable to attorneys at international law firms.

Ruling on a contested fee motion, Judge David O. Carter, in awarding the full fees requested, stated in a written opinion: "Moreover, Class Counsel's firm reputation is prestigious and thus on par with its comparator firms. Class Counsel's firm is a major player in litigating cutting edge international human rights cases .... One of the members of Class Counsel, DeSimone, has been named by the Daily Journal among the Top 50 Employment Lawyers in the State of California, inclusive of lawyers from top international law firms, for three years in a row."

In 2014, in agreement with Carol Sobel's Declaration, Judge Marshal stated that "all the Attorneys at SDSHH are 'exceptionally skilled and experienced and enjoy excellent reputations as civil rights litigators.' Sobel opines that the $725 rate for Mr. DeSimone is well within the market rates ..." Judge Marshal approved a requested hourly fee of $825 for Mr. DeSimone in 2016. In 2015, Mr.

11

DeSimone was awarded an hourly rate of $825.00 in companion cases to *Meneses et al. v. CVS,* Case No. BC 489739. Mr. DeSimone has now been honored as a Top Employment Lawyer in the State of California six out of the past eight years. In 2014, he was honored with a CLAY award, in conjunction with the California State Bar, in the field of civi rights.   Ms. Sobel has engaged in an extensive and rigorous analysis of attorneys rates in the Los Angeles area and concluded that, as thirty-one year lawyer, with exemplary experience and results Mr. DeSimone's rates should be $865.00 an hour.   (Carol Sobel Dec. ¶¶ 9-26; DeSimone Dec (DeSimone Dec. ¶¶ 4, 15).   Ms. Sobel also analyzed the experience of all other Attorneys and paralegals who performed legal work on this case and provided support for their hourly rate. (Carol Sobel Dec. ¶¶ 27-37; DeSimone Dec (DeSimone Dec. ¶¶ 16-20).

The amount of Plaintiff's Lodestar Attorneys' Fees is $1,196,230.00 and with the requested multiplier of two, Plaintiff respectfully requests an award of attorneys' fees in the amount of $2,392,460.00.

## IV. Plaintiff is entitled to recover costs under Federal Rule of Civil Procedure 54 (d)

According to the Federal Rules of Procedure "[u]nless a federal statute, these rules, or a court order provides otherwise, costs…should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). According to Local Rule 54-3, the following items are taxable as costs, and thus Plaintiff, as the prevailing party, should be allowed to recover:

- • $3,169. 63 (Fees for service of process pursuant to L.R. 54-3.2)
- • $1,988.68 (Reporter's transcripts pursuant to L.R. 54-3.4)
- • $30,647.33 (Depositions pursuant to L.R. 54-3.5)
- • $264.51 (Witness fees pursuant to L.R. 54-3.6)
- • $309.95 (Certification, exemplification and reproduction of documents pursuant to L.R. 54-3.10)

12

- $547.18 (State Court costs pursuant to L.R.-3.13)

Thus, Plaintiff should be allowed to recover $36,927.28.

## V.    THE COURT SHOULD AWARD A MULTIPLIER OF 2.0.

Under California fee-shifting provisions, including Civil Code §52.1(h), a multiplier may be awarded to compensate counsel for the particular circumstances of the case. *Crommie v. State of Cal., Public Utilities Com'n*, 840 F. Supp. 719, 725 (1994); *Serrano III*, 20 Cal.3d at 48-49. The factors that should be considered in determining whether a multiplier is appropriate include among others: the contingent nature of the litigation; the novelty and difficulty of the issues involved and the skill displayed in presenting them; and the extent to which the case precluded other employment. *Crommie*, 840 F. Supp. at 725. Applying these standards, enhancements have been awarded in numerous California public interest cases. *See, e.g., Serrano III,*20 Cal.3d 25 (1977) (awarding a 1.7 multiplier); *Coalition for Los Angeles County Planning v. Board of Supervisors*, 76 Cal.App.3d 241 (1977) (awarding a multiplier of more than doubled the lodestar); *Beasley v. Wells Fargo Bank*, 235 Cal.App.3d 1407 (1991) (awarding a 1.5 multiplier); *see also Wershba v. Apple Computer, 91* Cal. App.4th at 224, 255 (2001) (noting that multipliers "can range from 2 to 4 or even higher.")

### A.    Contingent Risk

The purpose of the contingent risk multiplier is two-fold: first, "to determine a fee that is likely to entice competent counsel to undertake difficult public interest cases" and "cases of significant societal importance," and, second, to provide compensation in the same manner that the market provides compensation for contingency cases, *i.e.*, by increasing the fee to compensate for the risks assumed. *Crommie,* 840 F. Supp. at 725. In other words, "the purpose [of the contingent risk multiplier] is to compensate for the risk of loss generally in contingency cases as a class." *Beasley*, 235 Cal. App. 3d at 1419. If any category of cases warrants a

13

contingent risk multiplier, civil rights cases do because of the inherent difficulties in litigating such cases.

As the California Supreme Court aptly stated, "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Ketchum v. Moses*, 24 Cal. 4th 1122,at 1132, 1133, 1136 (2001) (recognizing the common sense principle that "lawyers generally will not provide legal representation on a contingent basis unless they receive a premium for taking that risk.").

Here, the contingency risk factors are particularly strong. When Defendant ActioNet was first contacted about this case they sent selective emails to Plaintiff's counsel and asserted there was very little chance of liability verdict. They offered nuisance value for the case. While the parties participated in good faith in a mediation, Defendant stubbornly clung to a number which was approximately 5% of the eventual verdict even though Plaintiff indicated a willingness to negotiate and did not increase that offer until after opening statement. Defendants continuously asserted that Plaintiff had no claim and submitted a comprehensive Motion for Summary Judgment. Plaintiff Counsel's diligent preparation in taking the key depositions to demonstrate triable issue of fact and which satisfied the elements of each cause of action was instrumental in paving the way for Plaintiff to have his day in Court with a jury trial. DeSimone Dec (DeSimone Dec. ¶¶ 10-12).

**B.     The Novelty and Difficulty of the Issues Involved and the Skill Displayed in Presenting Them**

A separate and independent basis for awarding Plaintiff a multiplier arises from what the courts call the "quality" factor. An upward "multiplier" is justified based on the novelty and complexity of the litigation and the skill displayed in presenting the case. *Ketchum*, 24 Cal.4th at 1132; *Wing v. Asarco, Inc.*, 114 F.3d 986 (9th Cir. 1997) (upholding multiplier of 2.0 based on quality of representation

14

and excellent result obtained); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 1997) (upholding multiplier of 3.65 based on complexity and length of case). One specific consideration in adjusting a "lodestar" upward is the "results obtained," meaning that an exceptional result justifies an upward adjustment. *City of Oakland v. Oakland Raiders,* 203 Cal. App. 3d 78, 84, (1988) (2.34 multiplier justified by novelty of issues and success of result obtained).

Here, the result obtained justifies an upward adjustment. This was a contested liability case where the Defendant strongly contended the termination was justified and its hands were tied. Through the efforts of counsel, liability was established Mr. Yang's economic and non-economic damages were compellingly portrayed to the jury. When Defendant's expert attempted to paint Mr. Yang as being mentally unbalanced based on the narrative of the MMPI, Plaintiff's counsel debunked that theory and established that even Defendant's expert had to concede that Mr. Yang suffered a psychological injury. The verdict was an exceptional result and reflected the substantial harm done to Mr. Yang as well as the manner in which that harm was conveyed to the jury.

The Court saw firsthand the skill displayed in presenting these matters, including both in counsel's presentation to the jury and presentation of legal argument to the Court. In short, the Court saw high quality work product that was performed. All of these factors support an enhancement of the "lodestar" to reflect counsel's skill and ability.

## VI.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court award attorneys' fees in the amount of $2,392,640.00 and costs in the amount of $36,927.28. In addition, Plaintiff requests an award of fees for work performed in the filing of this motion that are incurred after these papers are filed, and which amount will be stated in the reply papers.

**V. JAMES DESIMONE LAW**
**BOHM LAW GROUP, INC.**
**NAVAB LAW**

Date: November 23, 2016                    By: _____

V. JAMES DESIMONE, ESQ.
KAVEH NAVAB, ESQ.
RYANN E. HALL, ESQ.
LAWRANCE A. BOHM, ESQ.

16